# ARKANSAS COURT OF APPEALS

DIVISION I
No. E–15–602

| | |
|---|---|
| | **Opinion Delivered** September 14, 2016 |
| JACK RABBIT SERVICES, LLC<br>APPELLANT | |
| V. | APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2015-BR-4 EC] |
| DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES,<br>EMPLOYER CONTRIBUTIONS UNIT<br>APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Jack Rabbit Services, LLC ("JRS"), appeals from the Arkansas Board of Review's ("Board") decision finding that it is required to pay unemployment-insurance taxes for the services performed by Orlando Mosley and similarly situated individuals. On appeal, JRS argues that the Board's decision is not supported by substantial evidence. We affirm.

On December 2, 2014, the Arkansas Department of Workforce Services ("Department") issued an unemployment-tax determination letter of liability to JRS, concluding that Orlando Mosley, a roadside-assistance provider under contract with JRS, and all other similarly situated individuals, were employees of JRS for purposes of unemployment-insurance taxes. On December 15, 2014, JRS filed a request for determination of coverage by the Department director ("Director"), and a hearing was held on March 12, 2015.

Kenneth Jennings, a 515 Unit Supervisor with the Department's Wage Investigation Unit, testified that JRS failed the first two elements of Ark. Code Ann. § 11-10-210(e),[1] the "free from control and direction" element, as well as the "services performed outside the usual course of business" element. Jennings testified that his decision that JRS's place of business included the roadways was premised on his presumption that JRS actually provided dispatch services. He stated that he was unsure if Mosley owned his own business, but that Mosley indicated on the questionnaire that he advertised his services.

David Hain, JRS's sole managing member, testified that JRS (located in Louisville, Kentucky) finds laborers and entities and then enters into a contractual agreement. He stated that JRS is a broker or labor finder and that it does not provide dispatch services. He said that Mosley did not work a set schedule designated by JRS, and that Mosley and other contractors were able to work when and how they wanted. According to Hain, Mosley was not required to work at all, and Mosley was free to accept or decline any service call or job. He testified that JRS did not supervise Mosley and that the contractors supervised themselves. He stated that Mosley was not instructed on how to perform his job, and that JRS was not involved until Mosley billed JRS for the service call. He testified that Mosley was not required to furnish a time record, and that JRS did not pay based on the amount of time spent on a job, but on the services the workers bill JRS for the completed service or for "gone on arrivals." He stated that JRS pays the independent contractor even if the driver is gone when the contractor shows up. He testified further that

---

[1](Supp. 2013).

[a]n independent contractor of JRS would receive a service call from a dispatch company, which JRS does not have any direct affiliation. JRS provides the independent contractor's information to a third-party dispatch company that is not affiliated with JRS. The dispatch company then uses the contact information to send out service calls. JRS has no control over the dispatch service. JRS does not pay the dispatch company. JRS does not control what the dispatchers say to an independent contractor.

Mr. Mosley, to my knowledge, did not wear a badge, but he might have worn a reflector vest that stated he was an "independent contractor" or "contracted by." JRS was not representing to the public that Mosley was an employee. If a contractor were representing himself or herself as an employee of JRS, I would ask the contractor to stop. JRS does not secure the location where the worker provides services.

According to Hain, Mosley had an investment in the services Mosley provided because he had to have a mode of transportation, tools and other equipment, and a cell phone. Hain said that Mosley was not reimbursed for any expenses. Hain also stated that Mosley could suffer a profit or loss while under contract with JRS. Hain testified that Mosley would not have been discharged by advertising his own business or for having his own business. He said that the amount of money a contractor was paid per job was negotiable.

Hain stated that JRS does not advertise for roadside services, and that it is not in the business of providing roadside-assistance services. He testified that JRS does not have a website, and that no member of the public can just call up JRS and receive roadside assistance. Hain admitted that it was possible for JRS to receive documentation from the third-party dispatch company to confirm information regarding the validity of a service call and whether the contractor actually went on a service run. According to Hain, the dispatch log would reflect occurrences such as originally accepting a service call and then later declining to provide the service. Hain stated that it was the contractor's right to refuse a service call. He

also stated that the contractor did not have to obtain a statement from the person receiving the services.

Hain testified that to his knowledge, JRS had never exercised any control over Mosley. He said that JRS had never provided training to the contractors. He stated that the contract prohibits texting while driving, which is against the law. Hain testified that contractors were required to wear identifying material so that "the person stranded on the side of the road is comfortable when the worker pulls up; it is important that the stranded motorist knows that the individual showing up is supposed to be there." He said that JRS has a contract with Jack Rabbit USA ("JRU") and that under that contract JRS finds labor and provides information regarding the labor to JRU. He stated that he did not have an interest or stake in JRU. He said that his compensation was not based on service calls but on JRS's overall costs and expenses. He stated that JRS's expenses would still get paid if there were no independent contractors accepting service calls. He testified that he does not know who the person receiving roadside assistance actually pays, but that JRS pays the contractors regardless of whether the person needing roadside assistance or his/her insurance company actually paid for the service. When asked about paragraph seventeen[2] of the contract, Hain stated that it had never been enforced and that it was included to, primarily, avoid types of liability.

---

[2]Unless otherwise agreed in writing with Company, Contractor shall not perform work, services, job or contract for/with any other roadside assistance provider company during the period that this Contract is in effect or during which time Contractor is accepting or performing jobs/services/runs for Company under this Contract. In the event Contractor breaches this term, Contractor shall be liable to Company for liquidated damages in the sum of $5,000.00.

The Board found that JRS failed to satisfy all three exemption requirements found in Arkansas Code Annotated section 11–10-210(e). Because JRS was unable to satisfy the requirements, the Board ruled that JRS was liable for unemployment-insurance taxes for the services performed by Orlando Mosley and similarly situated individuals.

JRS argues that the Board erred in finding that it failed to meet its burden on the three-prong test in section 11–10-210(e). To establish the exemption set forth in section 11–10-210(e), an employer must prove each of the three requirements in subsections (1)–(3).[3] If there is sufficient evidence to support the Board's finding that any one of the three requirements has not been met, the case must be affirmed.[4]

We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence.[5] Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[6] Even when there is evidence upon which the Board might have reached a different decision, the scope of our review is limited to a determination of whether the Board reasonably could have reached the decision that it did based upon the evidence before it.[7]

---

[3] *Barb's 3-D Demo Serv. v. Dir.*, 69 Ark. App. 350, 13 S.W.3d 206 (2000).

[4] *Id.*

[5] *Rodriguez v. Dir.*, 2013 Ark. App. 361.

[6] *Id.*

[7] *Id.*

The Board determines the credibility of witnesses and the weight to be afforded their testimony.[8]

Arkansas Code Annotated section 11–10–210(e) provides:

(e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:

(1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact;

(2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside all the places of business of the enterprise for which the service is performed; and

(3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

JRS argues on appeal that the Board erred in finding that JRS was the employer of the individual roadside-assistance providers. More specifically, it contends that (1) it did not control or direct the individual in connection with the performance of the roadside services, (2) the roadside services were outside the course and outside the place of JRS's business, and (3) the individual was customarily engaged in a trade or business.

In arguing that it lacked control or direction over the contractors that performed the roadside assistance, JRS contends that the Board utilized an overly broad interpretation and application of the control test. It cites *O'Dell v. Director*,[9] in which this court reversed the

---

[8] *Ballard v. Dir.*, 2012 Ark. App. 371.

[9] 2014 Ark. App. 504, 442 S.W.3d 897.

Board's finding that typists hired by a professional transcriptionist were employees for

unemployment-tax purposes.  In reversing *O'Dell*, this court stated:

> The Board found that O'Dell failed to prove the first prong: namely, that Polston and
> other typists were not free from her control.  We disagree with the Board's broad
> interpretation of the statute.  The sole evidence of control before the Board was that
> O'Dell gave instructions to her typists regarding the format, font, and margins, and she
> required them to return the completed work within 24-36 hours.  Once the work was
> returned, O'Dell would review it and make any revisions before forwarding the
> product to St. Vincent.  If any of the typists failed to adequately complete the work,
> O'Dell retained termination rights and did not pay them.  The Board's broad
> interpretation results in it becoming next to impossible for anyone to be free from
> control.  The legislature surely intended for independent contractors to exist in
> Arkansas or the statutory test would not exist.  Providing an independent contractor
> with basic guidelines and retaining the right to discontinue using them in the future
> does not equate to control sufficient to create an employer-employee relationship
> under the statute.
>
> Even had we agreed with the Board's statutory interpretation, this was also not
> substantial evidence of control under Ark. Code Ann. § 11-10-210(e)(1). While we
> give great deference to the Board's findings of facts, the facts must equate to substantial
> evidence that reasonable minds might accept as adequate to support a conclusion.  We
> simply do not agree there was evidence substantial enough for the Board to find that
> O'Dell had failed to meet the burden of proving that the typists she hired were free
> from her control and direction.[10]

In this case, the evidence of control was more substantial than that relied on by the

Board in *O'Dell*.  In finding that JRS failed to satisfy the first statutory exemption, the Board

stated in pertinent part:

> The fact that Jack Rabbit Services requires that contractors must identify themselves
> and their vehicles as Jack Rabbit contractors, that Jack Rabbit appears to be able to
> insist on training contractors, and considering that Jack Rabbit has the right to prohibit
> them from working for any other roadside assistance companies while under contract
> as Jack Rabbit contractors, and that the contract is open ended, tends to show a degree

---

[10]*O'Dell*, 2014 Ark. App. 504, at 3–4, 442 S.W.3d at 899–900.

7



of control sufficient to cause the arrangement between Jack Rabbit Services and Orlando Mosley to fail prong one of the three part test.

We hold that substantial evidence supports the Board's finding that JRS failed to satisfy this statutory exemption. Our affirmance of the Board's finding on subsection (e)(1) renders it unnecessary to discuss the remaining statutory exemptions.[11]

Affirmed.

GLADWIN, C.J., and HOOFMAN, J., agree.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Carolyn B. Witherspoon* and *Joseph A. Ramsey*, for appellant.

*Phyllis Edwards*, for appellee.

---

[11] *Barb's 3-D Demo Serv., supra.*